February 17, 2011

The Honorable Robert F. Deuell, M.D.
Chair, Senate Nominations Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0844

Re: Constitutionality of subsection 32.0248(h), Human Resources Code, which prohibits the Health and Human Services Commission from contracting under the Women's Health Program with entities that perform or promote elective abortions or with affiliates of such entities   (RQ-0902-GA)

Dear Senator Deuell:

You request an opinion about Human Resources Code section 32.0248, which requires the Health and Human Services Commission (HHSC) to establish a demonstration project through Medicaid,[1] Title XIX of the Social Security Act, "to expand access to preventive health and family planning services for women."[2] TEX. HUM. RES. CODE ANN. § 32.0248(a) (West Supp. 2010); see 42 U.S.C.A. §§ 1396–1396w-5 (West 2003 & Supp. 2010) (Title XIX of the Social Security Act).

Federal funding is not available for abortions except in very limited circumstances, and states are not required to fund abortions not funded by the federal Medicaid program. See Harris v. McRae, 448 U.S. 297, 310–11 (1980). Section 32.0248(h) provides that money spent on the demonstration project shall not be used to perform or promote elective abortions. See TEX. HUM. RES. CODE ANN. § 32.0248(h) (West Supp. 2010). It also bars the HHSC from contracting with an entity if the entity has an affiliate that performs or promotes elective abortions. See id. You ask about the constitutionality of these restrictions.

You state that the HHSC has not complied with section 32.0248(h) and that you wrote to the executive commissioner of the Health and Human Services Commission about this matter. Request Letter at 2. In reply, the executive commissioner stated that reimbursement under the Women's

---

[1]See Tex. Dep't of Human Servs. v. Christian Care Ctrs., Inc., 826 S.W.2d 715, 717 (Tex. App.—Austin 1992, writ denied) (identifying as "Medicaid" the "program of medical assistance to financially needy persons" administered under Human Resources Code section 32.021). See TEX. HUM. RES. CODE ANN. § 32.021(a) (West Supp. 2010) (providing that the HHSC shall administer the medical assistance program under chapter 32).

[2]Request Letter at 1 (available at www.texasattorneygeneral.gov).

Health Program did not include reimbursement for the performance or promotion of elective abortions, but they were "unable for legal reasons, . . . to fully implement the prohibition against contracting with an organization that is an affiliate of an entity that performs or promotes elective abortions."[3]   The executive commissioner's legal staff advised him on the basis of *Planned Parenthood of Houston v. Sanchez*, 403 F.3d 324 (5th Cir. 2005) "that a court would conclude that subsection (h) places conditions on the receipt of federal Medicaid funds that exceed federal regulations and thus violates the Supremacy Clause." Hawkins Letter at 4.

*Sanchez* addressed the constitutionality under Title X[4] of the Public Health Services Act of an appropriations act rider applicable to family planning funds. *See Sanchez*, 403 F.3d. at 340–42. The rider prohibited the distribution of certain family planning funds to entities "that contract with or provide funds to individuals or entities for the performance of elective abortion procedures." *Id.* at 328 (quoting General Appropriations Act, 78th Leg., R.S., ch. 1330, 2003 Tex. Gen. Laws 5023, 5159 (Rider 8b, Department of Health)). Family planning organizations sued in federal district court to bar enforcement of the rider. *See Planned Parenthood of Cent. Tex. v. Sanchez*, 280 F. Supp. 2d 590, 594–95 (W.D. Tex. 2003), *remanded by* 403 F.3d 324 (5th Cir. 2005). The trial court granted a preliminary injunction barring enforcement of the rider on the ground that it added an eligibility requirement to the federal requirements for receiving funds under Title X of the Public Health Services Act and therefore violated the Supremacy Clause. *See id.* at 602–06, 612. The defendants suggested that the plaintiffs could continue receiving family planning funds if they created a separate affiliate to provide abortion services, but the trial court determined that Rider 8 did not permit this solution. *Id.* at 611.

On appeal, the Fifth Circuit found that the rider did not conflict with Title X of the Public Health Services Act and that it could be read to permit providers to create independent affiliates that would perform abortions without federal funding. *Sanchez*, 403 F.3d at 337–38. Read in this way, it would be consistent with federal law and would not be preempted. *Id.* at 338–42.

The reasoning and conclusion in *Sanchez* about the preemption of Rider 8 by Title X of the Public Health Services Act does not apply to Medicaid, which is established under Title XIX of the Social Security Act. Title 42, section 1396a(p) of the United States Code provides in part:

> (1) *In addition to any other authority,* a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program

---

[3]Letter from Albert Hawkins, Executive Commissioner, Texas Health and Human Services Comm'n to Honorable Robert F. Deuell, M.D., at 2 (Feb. 4, 2009) (on file with the Opinion Committee) [hereinafter Hawkins Letter].

[4]42 U.S.C.A. §§ 300–300a-8 (West 2003).

under subchapter XVIII of this chapter under section 1320a-7,
1320a-7a, or 1395cc(b)(2) of this title.

42 U.S.C.A. § 1396a(p)(1) (West 2003 & Supp. 2010) (emphasis added). The First Circuit has determined that the italicized language "permit[s] a state to exclude an entity from its Medicaid program for *any* reason established by state law." *First Med. Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007) (citing S. REP. No. 100-109, at 20 (1987), *reprinted in* 1987 U.S.C.C.A.N. 700). On the basis of section of 1396a(p)(1), as interpreted by *First Medical Health Plan*, we believe that a court would likely find that Human Resources Code section 32.0248(h) is not preempted by the federal Medicaid law and regulations.[5]

Other constitutional provisions may be relevant to section 32.0248(h). *See Rust v. Sullivan*, 500 U.S. 173, 196 (1991) (addressing federal grant restrictions affecting the First Amendment right to engage in abortion advocacy and counseling); *Sanchez*, 280 F. Supp. 2d at 608–09 (opining that the rider placed an unconstitutional condition on a woman's right to have an abortion).[6] However, other constitutional issues may raise fact questions, which cannot be resolved in an attorney general opinion. Accordingly, we do not address additional constitutional provisions.

---

[5]We assume that Human Resources Code section 32.0248(h) is not contrary to federal Medicaid law or regulations.

[6]Briefers have raised these issues. *See* Brief from Lisa Graybill, Legal Director, American Civil Liberties Union of Texas, at 2–3 (Sept. 17, 2010), Brief from Tony R. Thornton, Chair, Board of Directors, Texas Association of Planned Parenthood Affiliates, at 4–6 (Sept. 16, 2010) (all briefs are on file with the Opinion Committee); *see also* Hawkins Letter at 3.

## S U M M A R Y

Human Resources Code section 32.0248(h), which applies to women's health care demonstration project services, provides that the Health and Human Services Commission may not contract with entities that are affiliates of entities that perform or promote elective abortions. This provision is not preempted by federal law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee